## UNITED STATES OF AMERICA *v.* DAY.

---

CONSULAR OFFICERS; ESTOPPEL; WAIVER; ACCOUNTING; DEPARTMENTAL CONSTRUCTION OF STATUTES; POST OF DUTY.

1. Where a vice consul general made no report to the State Department of the absence of his superior, the consul general, from his post of duty during a certain period, while the latter reported himself present and was paid the full compensation of his office, the vice consul general is thereafter estopped, in an accounting between the United States and himself, to claim the salary of his superior during such period, on the ground that the latter was absent and he performed the duties of the office.

2. Where the conduct of a vice consul general has been such as to mislead the regular accounting officers of the State Department, and induce them to act under the belief that the consul general was not absent from his post during certain periods, and therefore to settle his accounts, the vice consul general is estopped to claim the salary of the office of the consul general on the ground that the latter was absent from his post of duty during such period.

3. Where a vice consul general waives the right he has, under section 506 of the Consular Regulations of the State Department, to one half of the compensation of the consul general during a sixty days leave of absence of the latter, he is not entitled, in a subsequent accounting with the United States, to credit for such compensation during that period.

4. The established rule of the courts is to adopt the construction given and uniformly observed by one of the Executive Departments of the government, to statutes enacted for guidance in the administration of business intrusted to it, unless the same be plainly erroneous. (Following *United States ex rel. Wedderburn* v. *Bliss,* 12 App. D. C. 485.)

5. When the words of a statute are susceptible of different meanings, they are to be given that construction which tends to effectuate the general purposes of their enactment.

6. Whether a public officer has been absent from his post of duty within the meaning of a statute must, in a great measure, be determined by the character of the office, the nature of the duties, and circumstances and conditions under which they are to be performed.

7. Absence from his post of duty, within the meaning of section 1742, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 1192), providing that "no diplomatic or consular officer shall receive salary for the time during which he may be absent from his post by leave or otherwise, beyond the term of sixty days in any one year," does not mean mere temporary absence from the consular office itself, when at the same time the officer is within his district, but either a wilful or inexcusable abstention from the performance of his ordinary duties, or such continued illness, beyond the period of a regular leave of absence, as may wholly disable him from such performance.

8. In an accounting between a vice consul general and the sureties on his bond and the United States, the former are entitled to credit for any salary the vice consul general may have paid his superior, the consul general, during the latter's lifetime, whether receipted for in his name by his wife or not; but for any money paid to his widow after his death they are not entitled to credit, unless it is shown that she was the legal representative of her husband, and, as such, entitled to the money.

9. While the usual practice seems to be that the salary of the consular officers for each quarter is deducted from the receipts of that quarter, and not from the receipts of a subsequent one, a vice consul general who pays the consul general his salary out of the receipts of a subsequent quarter is nevertheless entitled to credit therefor, in the absence of a statute regulating the matter.

10. In a suit by the United States against a former vice consul general and the sureties on his bond, which involved a complicated statement of the accounts of the consular officer covering a considerable period of time, this court, on an appeal from a judgment of the lower court, suggested that preliminary proceedings should have been had under common-law Rule 46 of that court, whereby there would have been a reference to the auditor to state the account before the trial of the cause in that court.

No. 1592.    Submitted April 4, 1906.    Decided May 1, 1906.

HEARING on an appeal by the United States from a judgment of the Supreme Court of the District of Columbia, upon the verdict of a jury, in an action upon the bond of a consul officer.

*Reversed.*

The COURT in the opinion stated the facts as follows:

The United States brought this action against William H. Day and Nicholas E. Young, sureties on the official bond of Charles H. Day as vice and deputy consul general of the United States at Berlin, Germany, to recover certain moneys alleged to have been collected by said officer and unaccounted for by him.    The amount claimed to be due was $1,583.74, but certain credits were admitted by the plaintiff, which reduced the sum to $1,354.19.    The jury allowed certain other credits claimed by the defendants, and returned a verdict for the plaintiff for the sum of $116.09.    From the judgment rendered thereon the United States has appealed.

It appears that Charles H. Day was formerly consular clerk in the Berlin Consulate, and was made vice and deputy consul general in December, 1897.    Julius Goldschmidt was then consul general and remained in office until his death, on November 2, 1898.    Under the Consular Regulations, promulgated by

the Department of State under the law, deputy consuls general and vice consuls general perform the functions of their principal, both when he is temporarily absent or relieved from duty, and the vice consul general assumes responsible charge of the office when the principal is absent from his post (Rev. Stat. sec. 1674, U. S. Comp. Stat. 1901, p. 1149, Regulations 17, 18, 19). When the consul general is absent on leave for sixty days or less in one year, the vice consul officer acting in his place is entitled to receive one half the salary of his principal, unless there is an agreement to the contrary. After the expiration of the leave of absence the vice consular officer is entitled to the full compensation of the office; and, if the principal absents himself from the post for a longer period than ten days, the vice consular officer is entitled to the full compensation for the excess over ten days. If the consul dies, the vice is entitled to full compensation from the date of entering upon the duties of the office (Regulations, secs. 506, 571). Principal and vice consular officers must render accounts of the business of their offices when in charge; and a vice consular officer may waive his claim to his extra compensation and of the principal's compensation by agreement between them (Sec. 571).

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Jesse C. Adkins,* Assistant, for the United States, Appellant.

*Mr. Henry E. Davis* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It is provided by section 1742, Rev. Stat. (U. S. Comp. Stat. 1901, p. 1192), as follows:
"No diplomatic or consular officer shall receive salary for the time during which he may be absent from his post by leave or otherwise, beyond the term of sixty days in any one year."
The questions raised under the foregoing statutes and regula-

tions, by special instruction given and refused on behalf of the respective parties, relate to three general items of credit claimed by Charles H. Day on account of salary and allowances, out of the funds collected and reported by him, for certain periods in February, April, May, July, and October, 1898, prior to the death of Consul General Goldschmidt; and for part of the accrued salary of the latter, paid to his widow after his decease. All of these were submitted to the jury and considered, and allowed by them under the charge of the court.

Several of the items of credit claimed as defendants' principal's portion of the salary of the consul general on account of the absence of the latter from his post are founded upon different grounds.

(1) As to the items of salary accruing in February, 1898, we think the court erred in permitting the jury to allow the same. The law applicable thereto was correctly stated in the thirteenth special prayer asked by the plaintiff, which the court refused. Although Charles H. Day now claims that the consul general was absent from his post during the several days in February, he made no report to the State Department to that effect, and made no claim for the salary due him on that account. Nor did he make any reports of business transacted by him as vice consul general during any such absence of his principal. On the other hand, the account of the consul general, ending March 31, 1898, contained no such notice, and was accompanied by his official certificate, showing that he had not been absent. Consequently his account was made up and settled later upon that basis. Having failed to notify the officers of the United States of his claim in the proper way, and in time to prevent the regular allowance of the entire compensation to his principal, we are of the opinion that he was estopped to set it up as a credit in this suit.

(2) The evidence is recited in a confusing way in the bill of exceptions, and we are unable to ascertain just what the conditions are that surround the special items of salary claimed in April and May. If upon another trial it should appear that his conduct, as regards them, may have misled the regular ac-

counting officers of the plaintiff, and induced them to act under the belief that the consul general was not absent from his post during such times as he has claimed, and therefore to settle his accounts as correct, the rule laid down in respect of the preceding item will apply to these also.

(3) As regards the sixty days' leave of absence of the consul general after July 1, 1898, we are also unable to ascertain with certainty what amount of his salary during that period was claimed by the vice consul, although the special instructions asked indicate that some portion of it was in question. The evidence tended to show that the consul general was granted this leave, and that he notified the proper authority of his intention to begin the same on July 1, 1898. During the sixty days the vice consul general would be entitled to one half of the compensation of his principal under the regulation (sec. 506), unless he waived his right thereto. In connection with the foregoing evidence, an undated paper was offered, bearing the signature of Charles H. Day, in which his right to have one half of the salary for that time was expressly waived on behalf of the consul general, "while on his leave of absence." If this waiver applied to the particular leave of absence, and there seems to be no other to which it could apply, the defendants were not entitled to credit for part of the salary during that period. While the eleventh special instruction asked by the plaintiff may not have been completely applicable to the situation as presented, its substance should have been given.

(4) Another portion of the salary claim is for a period during which, after the expiration of his sixty days' leave of absence, the consul general was ill and absent from the consular office, although at his home in the city of Berlin. The question here involved turns upon the meaning of the words, "absent from his post," as used in section 1742, Rev. Stat. Relating to this point, the ninth prayer of the plaintiff was to this effect: If the consul general was within the city of Berlin during the time ending with his decease, on November 2, 1898, he was not absent from his post, though so ill as to be incapacitated to perform any business whatsoever. This was refused. The

tenth prayer, which was granted, was to the following effect: If the consul general was within the city of Berlin during the same period, and ill, but was able to, and did, attend to some of the business at the consular office, and did confer with the deputy or vice consul general and sign the correspondence of said office, then he could not be considered absent from his post, and such time is not to be deducted from the leave of absence that had been granted him. The second prayer, granted at the request of defendants, was to this effect: The words "post of duty" mean the office at which the consular duties are performed; and, therefore, if the consul general was absent from his said office and the vice consul general was there present and discharging the duties of the consul general during such absence, he would be entitled to the salary of his principal for every day over sixty days on which he discharged said duties.

As we understand the evidence, the consul general was absent from the consular district during part of his sixty days' leave which began July 1, but returned to his home in Berlin before its expiration, which would be, say, the last of September. He was then ill and remained in Berlin until his death on November 2. It would seem, from the several prayers above stated, that the vice consul general's claim of the salary was not only for all the time after the expiration of the leave of absence, but also for part of the time included therein. If, as heretofore remarked, the vice consul general waived his claim to the half of the salary during the leave of absence, his claim to that extent is inadmissible. And whether the consul general was within or without the consular district during that period is of no consequence. If, as the evidence to which plaintiff's tenth prayer was directed tended to show, the consul general, after his return to Berlin, assumed control of the direction of the affairs of the office, performed some of his duties in person, and signed all of the correspondence up to a certain date, the court was right in instructing the jury that he was not absent from his post during said time. The second prayer given for the defendants may have been intended as the counter merely of the proposition embodied in the plaintiff's ninth prayer that

had been denied. It was broad enough, however, to deprive the plaintiff of some of the benefit of the tenth prayer which had been given to the jury, for it informed them that the post of the consul general was the consular office, and absence therefrom, though not from the consular district, was absence from his post. Consequently the jury might well have understood that if the direction of affairs by the consul general, his conferences with the vice consul general, and his signing of official reports and correspondence was done at his home, and not at the consular office, he was nevertheless absent from his post during the time.

It is necessary, therefore, to consider whether, as broadly stated, this second prayer is founded on a correct view of the meaning of section 1742, Rev. Stat.

It appears from the evidence that the State Department has always understood absence from his post by a consular officer to mean absence, not from the consular office, but from the district in which it is situated, and that it has uniformly acted upon that construction. The established rule of the courts is to adopt the construction given and uniformly observed by one of the departments of the government to statutes enacted for guidance in the administration of the business intrusted to it, unless the same be plainly erroneous. *United States ex rel. Wedderburn* v. *Bliss,* 12 App. D. C. 485, 498, and cases there cited.

We are not prepared to say that this construction is plainly erroneous. When the words of a statute are susceptible of different meanings at all, they are to be given that construction which tends to effectuate the general purpose of their enactment. The absence of a public officer from his post of duty that is provided for by a statute must, in great measure, be determined by the character of the office, the nature of the duties, and the circumstances and conditions under which they are to be performed. This is illustrated by two decisions, the first of which is relied on by the appellees and the second by the appellant. *Engeman* v. *State,* 54 N. J. L. 247, 251, 23 Atl. 676; *Skinner* v. *Cowley County,* 63 Kan. 575, 561, 66 Pac. 635. In the first of those cases it was held that a judge who

failed to appear at the appointed time and place for the session of the court was absent from his post, although he was not absent from the territorial jurisdiction of the court.

In the second case, a sheriff, whose duty it was generally to serve process and perform other acts within a county, was not absent while in the county, although he was not in attendance upon the court, being held therein at the time, which was one of his duties.

The consular district in this case extended beyond the limits of the city of Berlin, and the evidence shows that there was another city or town where an office is maintained that is under the supervision of the consul general.

It is apparent that the consul general might be called upon at times to visit and inspect the business of this subordinate office, and to perform certain duties pertaining thereto. It is reasonable to presume, also, that the performance of some of his duties might require him, at times, to perform some official act outside the precincts of his particular office building. In such cases it would be unreasonable to say that he was absent from his post. And it seems unreasonable to suppose that, under other ordinary conditions, it was intended by the framers of the statute he should be actually in his office during all of the business hours from day to day, in order to prevent his salary for the time being from passing to his deputy who would thereby be in charge of the office as vice consul general. Consequently, we think it was right to charge the jury that the consul general, though temporarily ill, was not absent from his post if he was able to, and did, give direction to the business of the consulate, and supervise and sign all of the official correspondence relating thereto. Absence from his post, in the sense used in the statute, does not mean, in our opinion, mere temporary absence from the consular office itself, when, at the same time, the officer is within his district, but either a wilful or inexcusable abstention from the performance of his ordinary duties, or such continuous illness, beyond the period of a regular leave of absence, as may wholly disable him from such performance.

In accordance with these views, we conclude that the learned justice was right in refusing the plaintiff's ninth special prayer, but that he erred in giving the defendants' second prayer without modification.

(3) This brings us to the two remaining items of credit that were allowed the defendants by the verdict. One of these is for salary due to the consul general from May 1 to June 30, 1898, amounting to $670.32. The other, amounting to $119.54, is for salary from July 1 to August 31, 1898. For these two payments receipts were presented that had been signed by Julius Goldschmidt, per Ida W. Goldschmidt, who was his wife. The second receipt is for $652.17, but the witness Charles H. Day testified that only $119.54 were actually paid to her. These receipts bear no date, but were shown to have been signed and delivered after the death of Mr. Goldschmidt. It is not made clear by the evidence that any of this salary was paid to the consul general before his death, though the evidence is susceptible of that construction. The witness admitted, however, that $119.54 were paid to this widow after his death. If any salary was due to the consul general for those periods, as seems to have been the case, the defendants are entitled to credit for so much thereof as was actually paid to, or received by him, whether receipted for in his name by his wife or not. For the part paid to the widow after his death, the defendants are not entitled to credit in this action unless it be shown that she was the legal representative of her husband and as such entitled to the possession of the money. There was no evidence on this point. The fourth prayer requested by the plaintiff with respect to the item of $119.54, paid after the death of the consul general, should have been given. Upon another trial, the charge to the jury should embody the conclusions above expressed.

4. It is further contended on plaintiff's behalf that, even if these sums were due to the consul general and paid to him or to his legal representative, the defendants were not entitled to credit for the same, if, as it appears, the vice consul general had sufficient funds in hand from the receipts of the office before June 30, 1898, to pay the same. The contention, which

was embodied in a prayer which the court refused to give, is that the salary for each quarter must be deducted from the receipts of that quarter, and from no subsequent one. While this seems to have been the usual and regular way of making settlements, it does not follow that the salary could not be deducted from the receipts of subsequent quarters. Our attention has been called to no statute regulating the matter. Owing to the illness of the consul general, the circumstances surrounding the administration of the office were peculiar. The vice consul general, as we have seen, was not regularly in charge of the office all of the time. The consul general was ill and doubtless in need of the money. If, therefore, the money was due him, and was actually paid over in good faith to him or his legal representative, we see no reason why the defendants should not have credit for it.

5. We have been embarrassed in the consideration of this case by the complicated statement of the accounts of the consular office, which cover a considerable period of time, and the want of a condensed statement showing the particular items in controversy, together with the evidence explanatory of the same. Doubtless the same difficulty was experienced on the trial before the jury, and might have been obviated by preliminary proceedings under common law Rule 46 of the supreme court of the District.

For the reasons heretofore given the judgment will be reversed and the case remanded for a new trial.    *Reversed.*